UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| AL AND PO CORPORATION, individually and on behalf of all others similarly situated, ) ) ) | |
| Plaintiff, ) ) | No. 14 C 01893 |
| v. ) ) | Judge Edmond E. Chang |
| MED-CARE DIABETIC & MEDICAL SUPPLIES, Inc., ) ) ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff AL and PO Corporation filed this proposed class-action suit against Defendant Med-Care Diabetic & Medical Supplies, Inc., alleging that Med-Care sent unsolicited faxes in violation of the Telephone Consumer Protection Act (for short, the TCPA), 47 U.S.C. § 227 *et seq*. R. 1, Compl. ¶ 1.[1] Med-Care now moves to dismiss the complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). R. 14, Mot. Dismiss. For the reasons stated below, the motion to dismiss is denied in part and granted in part.

**I. Background**

The complaint is straightforward. Med-Care is a Florida corporation that sells medical and pharmaceutical supplies through a network of subcontractors that market products and services on its behalf. Compl. ¶¶ 1, 8. AL and PO is an Illinois

---

[1]This Court has subject matter jurisdiction under 28 U.S.C. § 1331. Citations to the docket are indicated by "R." followed by the docket number.

corporation, the nature of whose business is unknown (but presumably it is related to medical supplies). *Id.* ¶ 7. On August 6, 2013, AL and PO received an unsolicited fax from Med-Care *Id.* ¶ 9. The fax, a copy of which was attached to the complaint, consisted of a full page of text and is reproduced here.



*See* R. 1-1, Med-Care Fax, Exh. A to Compl. After identifying the recipient as "a possible candidate for our affiliate/subcontractor program," the fax listed various supplies and goods that Med-Care could provide for the recipient's patients. *Id.* The fax explained that "[s]ubcontracting agreements can be a lucrative method for smaller providers to maintain and enlarge their referral sources," informed the recipient that "[y]ou will be able to provide a wide variety of quality products and services to current and future patients," and ended with an invitation to "call or email us if you are interested in taking advantage of this opportunity," providing a toll-free number and an email address. *Id.*

AL and PO had no business relationship with Med-Care before receiving this fax, which had not been invited or consented to in any way. Compl. ¶ 13. AL and PO believes that it is one of a large class of businesses that all received the same fax without permission from Med-Care. *Id.* ¶¶ 16-19.

## II. Legal Standard

A Rule 12(b)(6) motion "challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Order of Police Chicago Lodge No. 7,* 570 F.3d 811, 820 (7th Cir. 2009). The complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. v. Twombly,* 550 U.S. 544, 570 (2007)). In evaluating a motion to dismiss, the Court must accept as true the complaint's factual allegations and draw reasonable inferences in Plaintiffs' favor. *Ashcroft v. al-Kidd*, 131 S.Ct. 2074, 2079 (2011).

Nevertheless, the allegations "must be enough to raise a right to relief above the speculative level," *Twombly,* 550 U.S. at 555, and are entitled to an assumption of truth so long as they are *factual* in nature, rather than mere *legal* conclusions. *Iqbal,* 556 U.S. at 678-79.

### III. Analysis

Under the TCPA, it is unlawful "to use any telephone facsimile machine, computer, or other device to send, to a telephone facsimile machine, an unsolicited advertisement," unless certain conditions are met. 47 U.S.C. § 227(b)(1)(C). An "unsolicited advertisement" is defined as "any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's prior express invitation or permission, in writing or otherwise." 47 U.S.C. § 227(a)(5). Exceptions apply if the sender has an established business relationship with the recipient, the sender obtained the number from the recipient or the recipient made its fax number available for distribution, or the advertisement contains an opt-out notice. 47 U.S.C. §§ 227(b)(1)(C)(i)-(iii). This opt-out notice must state that the recipient "may make a request to the sender … not to send any future unsolicited advertisements." 47 U.S.C. § 227(b)(2)(D)(ii).

The TCPA provides for a private cause of action to recover the greater of the actual monetary loss caused or $500 in statutory damages for each violation; a court may in its discretion treble these damages if it finds that the violation was willful. 47 U.S.C. § 227(b)(3). Count 1 of AL and PO's complaint alleges that Med-Care's unwanted faxes violated the TCPA's general prohibition on unsolicited

4

advertisements. Compl. ¶¶ 26-29. Count 2 alleges that Med-Care also independently violated the TCPA by failing to include opt-out notices. *Id.* ¶¶ 30-32.

**A. Count One: Plausible Claim that Med-Care's Fax was Advertisement**

It is undisputed that the fax in question was unsolicited, and that none of the mentioned exceptions to the prohibition apply here. So the only question in resolving the motion to dismiss the first count is whether Med-Care's fax constituted advertising material. Med-Care advances two reasons for why it was not an advertisement, as defined by the TCPA. Neither reason passes muster.

First, Med-Care asserts that by soliciting participation in Med-Care's subcontractor program, the fax was not an advertisement because it did not seek to sell anything, but rather simply made a proposal akin to an offer of employment. R. 15, Def.'s Br. at 4-6. In support of this proposition, Med-Care relies primarily on a district court opinion from Pennsylvania, *Lutz Appellate Servs. v. Curry*, 859 F. Supp. 180 (E.D. Penn. 1994). In *Lutz*, the defendant, a law firm, sent out two short faxes stating that the firm was hiring. *Id.* at 181. The first stated just the firm's name, and the words "is now hiring," "all positions," and "call today [1-800 number]" on separate lines. *Id.* The second message included the firm name and telephone number, but elaborated slightly with the words "appellate specialists needed," "generous pay structure," and "experience welcome but not necessary." *Id. Lutz* held that these faxes did not run afoul of the TCPA, reasoning that a "company's advertisement of available job opportunities within its ranks is not the advertisement of the *commercial availability of property.*" *Id.* (emphasis added).

5

So far, this Court agrees; drawing attention to a job opening does not equate to promoting the "commercial availability or quality of any property, goods, or services." 47 U.S.C. § 227(a)(5). But Med-Care seeks to extend this logic to an entirely different form of message—solicitations for independent contractors specifically aimed at recruiting someone (or some corporation) to market the fax sender's products, as Med-Care's fax sought to do. Med-Care points to another district court opinion that embraced such a rule for a similar communication, holding that a defendant which had used an automatic dialer to invite people to attend recruiting webinars to learn about its insurance products and services, in order to vend them, had not violated the TCPA. *Friedman v. Torchmark Corp.*, No. 12 CV 2837, 2013 WL 4102201, at *5 (S.D. Cal. Aug. 13, 2013). According to *Friedman*, an unsolicited invitation to "learn about Defendant's products to potentially sell them [was] similar to the offer of employment in *Lutz*," in essence a recruiting opportunity, and thus "an offer of an independent contractor relationship [was] still not material advertising the commercial availability of any property, goods, or services." *Id.*

*Lutz* and *Friedman* (at least on the facts known about the phone calls in *Friedman*) are distinguishable. A barebones "help wanted" notice and an open-ended invitation to attend a webinar, on their own, do not promote any property, goods, or services; the same cannot be said however for a full-page announcement, like Med-Care's fax—heralding a "lucrative" opportunity to do business—that outlines in detail a company's line of products. Med-Care Fax. Med-Care's fax not

only trumpeted its "wide variety of quality products," it specifically listed twelve separate examples, including "diabetic testing supplies," "syringes/insulin & pumps," "nebulizer medication," "sleep apnea supplies," and "diabetic shoes." *Id*. Even the automatic call in *Friedman*, though also intended to recruit contractor-salesmen, itself only announced a generic opportunity to learn about the defendant's range of products, otherwise saying nothing about them. As another court in this District recently stated in considering a fax similar to Med-Care's, whether a communication is covered by the TCPA requires a look at "the precise information included in the fax, such as descriptions of the availability or quality of products." *Brodsky v. HumanaDental Ins. Co.*, No. 10 C 3233, 2014 WL 2780089, at *7 (N.D. Ill. June 12, 2014) (finding flier sent by insurance company specifically listing "portfolio of specialty benefits products" covered under TCPA). There is no doubt that the precise information in Med-Care's fax highlighted, in a bullet-form list, the availability of its goods and services. *See Green v. Anthony Clark Int'l Ins. Brokers, Ltd.*, No. 09 C 1541, 2009 WL 2515594, at *3 (N.D. Ill. Aug. 17, 2009) (fax publicizing availability of sender to perform brokering services should recipient firm seek to merge was advertisement for purposes of motion to dismiss).

This leads to Med-Care's second argument in support of dismissal, namely that the fax did not violate the TCPA because "the purpose of the message was to seek people to sell the defendant's products *to others*." Def.'s Br. at 6. In other words, even if the fax highlighted available goods and services, it was not an advertisement because the recipient, as a potential intermediary only, was never

7

the intended buyer. But this definition of advertising is too constrained. An ordinary person "knows … that 'advertising,'" more simply, "is the act of announcing something for sale." *Green v. Anthony Clark Int'l Ins. Brokers, Ltd.*, No. 09 C 1541, 2010 WL 431673, at *5 (N.D. Ill. Feb. 1, 2010) (stating that given lack of precise definition of advertising in TCPA, courts should look to ordinary or natural meaning) (citing *Weinberg v. City of Chicago*, 310 F.3d 1029, 1042 (7th Cir. 2002)). Indeed, Webster's Dictionary defines "advertising" as "the action of calling something (as a commodity for sale, a service offered or desired) to the attention of the public especially by means of printed or broadcast paid announcements." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 31 (3d ed. 1981). Note that the commodity is announced "to the attention of the public" and in no way is the audience restricted to a direct consumer of the publicized good or any other party.[2] A toy commercial is no less an advertisement even though its primary target is children, who would not be expected to purchase the product themselves (rather, their parents would be the actual buyers). Similarly, it appears that Med-Care has a strong interest in cultivating a base of subcontractors and, even accepting for the

---

[2]In this vein, Med-Care's reliance on cases suggesting that an announcement is not an advertisement so long as it holds out only the potential for the recipient to be selected to participate in a publicized service misapprehends the issue. *See N.B. Indus. v. Wells Fargo & Co.*, No. 10 CV 03203, 2010 WL 4939970, at *9 (N.D. Cal. Nov. 30, 2010) (fax soliciting applications for an award not advertisement); *Phillips Randolph Enters., LLC v. Adler-Weiner Research Chicago, Inc.*, 526 F. Supp. 2d 851, 853 (N.D. Ill. 2007) (invitation to participate in research study that told recipients participation was contingent on qualification not an advertisement). Just as an advertisement does not cease to be an advertisement simply because the recipient is not necessarily a definite and direct buyer, it is not dependent on some condition coming to pass (like a solicited party responding) in order to be transformed into advertising material. Again, what matters is if the message itself publicizes the commercial availability of some good or service, regardless of the result.

8

moment that these subcontractors are not themselves direct purchasers of Med-Care's goods, Med-Care is trying to reach them as a means of ultimately selling its goods and services through them.[3] A fax that calls attention to goods or products in order to facilitate this kind of commercial exchange fits with a natural understanding of the term advertising. Consequently, AL and PO has stated a claim under the TCPA that, at the least, survives Med-Care's motion to dismiss.

**B. Count Two: No Separate Cause of Action for Lack of Opt-Out Notice**

Count 2, however, alleging that Med-Care failed to include an opt-out notice in its fax as described in § 227(b)(2)(D), must be dismissed. The TCPA does not affirmatively require the sender of a fax to include an opt-out notice. Instead, if the sender of an unsolicited faxed advertisement has "an established business relationship with the recipient" and certain other conditions are met, including that the fax contains a qualifying opt-out notice, then there is no liability. *See* 47 U.S.C. § 227(b)(1)(C)(iii). Section 227(b)(2)(D), the alleged basis of Count 2, merely describes the characteristics an opt-out notice must include in order to qualify for the exception. Thus, the TCPA does not provide for an independent cause of action solely on the basis of an absent opt-out notice. And, in any event, AL and PO affirmatively alleges that it "had no prior relationship with Med-Care," so the opt-

---

[3]We know very little at this stage about how the subcontractor program works. Does the subcontractor merely market Med-Care's goods and receive a commission? Does the subcontractor buy Med-Care's products and then resell them? Depending on what discovery may show, now that AL and PO has stated a plausible claim to relief, Med-Care's characterization that the recipients of its fax could not be considered direct purchasers may well be belied, which would obviously undercut its attempt to find safe harbor in its solicitation-of-contractors defense.

9

out notice is neither here nor there in this case. (It would be a different matter if AL and PO had alleged that, in the alternative, it did have an established business relationship with Med-Care and the fax did not have the requisite opt-out notice. But AL and PO did not plead that.) Thus, in effect, AL and PO seeks to impose the same measure of damages twice for the same conduct, namely, sending the unsolicited fax. The text of the TCPA does not support that result.

AL and PO argues that a private cause of action is nevertheless provided by 47 C.F.R. 64.1200(a)(4)(iv): "[a] facsimile advertisement that is sent to a recipient that has provided prior express invitation or permission to the sender must include an opt-out notice that complies with the requirements in paragraph (a)(4)(iii) of this section." R. 21, Pl.'s Resp. Br. at 11-12. Once again, however, that regulation and all of the related cases AL and PO cites to, specifically deal only with fax advertisements that have been sent with the recipient's permission or on the basis of a prior business relationship. *See* 47 C.F.R. 64.1200(a)(4)(iv). It is undisputed that Med-Care's fax was *un*solicited and there was no established prior relationship. In sum, § 227(b)(2)(D) and its requirements on opt-out notices are inapplicable to Med-Care's fax and Count 2 must accordingly be dismissed.

## IV. Conclusion

As explained in this Opinion, Med-Care's motion to dismiss is denied in part and granted in part. Count 1 of AL and PO's complaint may proceed, but Count 2 is dismissed.

ENTERED:

s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: December 10, 2014